UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MAE POLK,<br><br>        Appellant,<br><br>    v.<br><br>COUNTY OF CONTRA COSTA,<br><br>        Appellee. | CASE NO. 1:12-CV-0290<br><br>ORDER RE: APPEAL FROM ORDER OF THE BANKRUPTCY COURT |

**I. Background**

Appellant Susan Mae Polk ("Appellant") was convicted in California state criminal court for the 2002 murder of her husband. Throughout the duration of the criminal proceedings, Appellant was also involved in civil proceedings concerning the division of a house ("Property") owned by Appellant and the estate of Appellant's deceased husband ("Estate"). Numerous appeals were taken by Appellant in both the criminal and civil matters. Appellant filed for bankruptcy protection and received a discharge while her criminal and civil appeals were pending. Appellant then moved to have her bankruptcy case reopened in light of later proceedings in the criminal and civil matters that Appellant alleges violates the terms of her bankruptcy discharge. This is an appeal of a 2012 Bankruptcy Court order denying Appellant relief. Appellant is incarcerated at the California Institute for Women in Chowchilla and is proceeding in propria persona.

Appellant's husband was killed in October 2002 and Appellant was charged with his murder. Appellant was represented by counsel in her first criminal trial which ended in a mistrial. Appellant represented herself in the second trial, which ended in her conviction for second degree

murder.

In August 2005, the Estate initiated a partition action in state civil court to divide the Estate's and Appellant's interests in the Property. Appellant and the Estate each had a one-half ownership interest in the Property.

In September 2005, prior to her second criminal trial, Appellant executed a promissory note in favor of Appellee County of Contra Costa ("County") that was secured by a deed of trust against the Property. The deed of trust was recorded by the County. The purpose of the lien was to secure for the County reimbursement for legal services that were provided for Appellant's defense in her first murder trial, pursuant to California Penal Code § 987.8(a). The amount of the lien was to be set by the Superior Court for the County of Contra Costa.

In March 2006, the state civil court granted summary judgment in the partition action in favor of the Estate, finding that the Estate was entitled to partition of the Property as a matter of right. This order was not appealed. The state civil court appointed a referee to determine whether the Property should be sold and the proceeds divided amongst the parties.

In February 2007, Appellant was found guilty of the criminal charges and later sentenced. In August 2007, the County sought an order from the state criminal court pursuant to California Penal Code § 987.8 requiring Appellant to reimburse the County for her legal expenses. An order was entered by the state criminal court on September 20, 2007, requiring Appellant to repay the County and setting the amount owed at $212,033.31 ("Original Reimbursement Order"). Appellant appealed her conviction and the Original Reimbursement Order. However, Appellant did not appeal the amount that the state criminal court determined Appellant owed for reimbursement.

In the partition action in the state civil court, the sale of the Property was underway. Various orders were entered between June 2007 and early 2008 that were appealed by Appellant. Among the relevant orders was a November 30, 2007, order approving the sale of the Property ("Sale Confirmation Order"). The Sale Confirmation Order was appealed by Appellant on December 12, 2007.

The County submitted a claim to the state civil court on December 18, 2007, regarding its

lien against the Property. The County provided the state civil court with the state criminal court's Original Reimbursement Order as evidence of the lien amount. The state civil court entered judgment on January 10, 2008, approving the County's lien ("Distribution Order"). Appellant appealed the Distribution Order on January 29, 2008.

On February 1, 2008, the state civil court formalized the Distribution Order with a written award of costs and liens that stated the sums to be paid from the sale proceeds. Appellant and the Estate each had a share of $200,019.09 after payment of joint encumbrances and the costs of the partition. Appellant's share, however, was found to be subject to two liens, one of which was held by the County. Appellant's share was distributed to the County and the other lienholder, exhausting Appellant's share of the sale proceeds and leaving nothing to be distributed to Appellant. The County was awarded $192,338.09 pursuant to the Distribution Order. The County received a check in that amount shortly thereafter.

On May 4, 2009, Appellant filed a Chapter 7 petition with the Bankruptcy Court. No creditor, including the County, filed a proof of claim. Appellant received a discharge on August 13, 2009. The bankruptcy case was closed September 4, 2009.

At the time Appellant commenced bankruptcy proceedings, appeals were pending in the First Appellate District of the Court of Appeal of California from both the criminal and civil proceedings. From the civil proceedings, the Sale Confirmation Order and the Distribution Order were pending on appeal. From the criminal proceedings, the Original Reimbursement Order and Appellant's conviction were pending on appeal.

The Appellate Court entered orders on the appeals from the state civil court on August 26, 2009, affirming the Sale Confirmation Order and the Distribution Order. Specifically, the Appellate Court upheld the state civil court orders respecting the County's lien.

On December 13, 2010, the Appellate Court entered an order on the appeals from the state criminal court. Appellant's conviction was affirmed. However, the Original Reimbursement Order was vacated and remanded to the trial court to determine whether Appellant had the present ability to pay, as required by California Penal Code § 987.8. On remand, the state criminal court found that Appellant did have the ability to repay the County and ordered the County retain the

amount already distributed to it from the partition sale ("Second Reimbursement Order").

Appellant moved to reopen the bankruptcy case in July of 2011 to challenge the County's post-discharge actions. Appellant sought to have the proceeds from the partition sale that were distributed to the County returned to her. The Bankruptcy Court issued Findings of Fact and Conclusions of Law ("F&C") on January 31, 2012 entitled "Order Denying Motion for Enjoinder to Creditor and Inferior Court and Denying Motion to Avoid Lien of Contra Costa County," along with a separate Order denying Appellant's motions and denying the relief requested. Appellant filed a timely appeal to this Court. Appellant seeks "an order to the [C]ounty to turn over to [Appellant] the property it seized: $193,233.04 plus $67,278.91 in interest as compensatory damages, and for any additional relief that the [C]ourt deems appropriate." Doc. 17, Appellant Brief, at 90.

## II. Legal Standard

A district court reviews *de novo* a bankruptcy court's conclusions of law. Paulman v. Gateway Venture Partners III, 163 F.3d 570, 575 (9th Cir. 1998). Findings of fact by the bankruptcy judge shall not be disturbed unless they are clearly erroneous. Fed. R. Bankr. Proc. 8013. "Mixed questions of law and fact are reviewed *de novo*. Such a question arises when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule." In re OTA, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995).

## III. Discussion

**A. Bankruptcy Court Decision**

The Bankruptcy Court noted that the foundation of Appellant's arguments before the Bankruptcy Court was her belief that "the County is in unlawful possession of the sale proceeds from the sale of her property, based on either bankruptcy law or state law." E.R. 263:19-21. The Bankruptcy Court construed Appellant's moving papers as "(1) a motion for injunctive relief or other relief for violation of the discharge injunction, and (2) a motion to avoid a judicial lien." E.R. 263:18-19. The Bankruptcy Court explained that the County had two avenues to justify its

right to the sale proceeds: a statutory obligation pursuant to California Penal Code § 987.8 that was pursued in the state criminal action and a separate contractual obligation based on the promissory note and deed of trust securing the County's interest in the Property that was pursued in the state civil action.  The Bankruptcy Court found that the County violated the discharge injunction in the state criminal case but denied Appellant's requested relief because "[t]he County did not violate the discharge injunction in retaining the sale proceeds.  The County was in possession of the sale proceeds by a valid pre-petition order from the state court in the civil proceeding pursuant to the deed of trust securing the promissory note." E.R. 275:19-20.  Based upon the state civil proceedings, "[t]he County's security interest in the sale proceeds arose by way of its pre-petition deed of trust.  The bankruptcy case had no effect on the validity of that deed of trust." E.R. 275:21-22.

The County did violate the discharge injunction by continuing the reimbursement portion of the criminal case post-discharge. The Original Reimbursement Order required Appellant to repay the County $212,033.31 pursuant to California Penal Code § 987.8.  This was a pre-petition order that was pending on appeal when Appellant filed for bankruptcy and was vacated by the Appellate Court post-discharge.  On remand, the County obtained the Second Reimbursement Order without approval of the Bankruptcy Court.  The Bankruptcy Court found the Second Reimbursement Order to be void as violating the discharge injunction because the County was proceeding against Appellant *in personam* on a debt that was discharged in bankruptcy.  The County therefore could not retain the sale proceeds based on either the vacated Original Reimbursement Order or the void Second Reimbursement Order.  The County has not appealed this determination and Appellant ostensibly does not challenge this determination in her appeal. Appellant was not entitled to compensatory damages, in spite of the finding that the County violated the discharge injunction, because Appellant did not suffer any harm from the County's actions.

The County's retention of funds was justified as the Bankruptcy Court determined that "the County received the sale proceeds by a valid order from the state court in the civil proceeding, which granted the County an interest in the proceeds due to it holding a security interest (the deed

of trust securing the promissory note) against the sold property." E.R. 268:23-26.  In reaching this determination, the Bankruptcy Court considered the Distribution Order from the partition action in the state civil court and the statutory scheme the court followed.  Specifically, the Bankruptcy Court considered California Code of Civil Procedure § 873.820[1] for the priority of distribution of sale proceeds and stated that the state civil court, in the partition action, necessarily found Appellant's share to be subject to valid lienholders, one of which was the County.  The Bankruptcy Court noted that the unrecorded Original Reimbursement Order from the state criminal court would have provided the County with only an unsecured interest in the Property and thus a lower priority than Appellant for distribution of the sale proceeds.  The Bankruptcy Court concluded that "[s]ince the state court granted the County with a higher priority interest than [Appellant] in the sale proceeds due to the County's status as a lienholder, the court must have necessarily determined that the County's lien interest arose from its deed of trust and promissory note." E.R. 270.  The state civil court orders were not void because they did not determine Appellant's *in personam* liability, which was discharged during bankruptcy; rather, the orders determined "[Appellant's] *in rem* liability, as the state court determined that the County had a valid lien interest entitling it to the sale proceeds." E.R. 272 (emphasis added).  The Bankruptcy Court found the state civil decisions valid and entitled to full faith and credit before the Bankruptcy Court. E.R. 272-73.

Appellant did in fact "challenge the validity of the orders from the civil proceeding on various substantive and procedural grounds" in the Bankruptcy Court. E.R. 271.  The Bankruptcy Court declined to consider Appellant's collateral attacks to the state civil court orders, finding such arguments precluded by the Rooker-Feldman doctrine.

Appellant also moved the Bankruptcy Court to avoid the County's lien pursuant to 11 U.S.C § 522(f). The Bankruptcy Court ruled against Appellant for two reasons.  First, the County's lien was a consensual lien arising from the promissory note and deed of trust, not a judicial lien that could be avoided per the statute.  Second, the sale of the Property terminated

---

[1] The F&C cites California Code of Civil Procedure § 873.810.  However, Section 873.820 concerns the priority of distribution, not Section 873.810.  This error does not change the outcome of this appeal, as the Bankruptcy Court's discussion clearly shows that it considered the priority enumerated in Section 873.820. *See* E.R. 269.

6

1  Appellant's interest in the Property itself and the state civil court determined that the County had a
2  higher priority interest in the proceeds than Appellant, therefore Appellant had no interest in either
3  the Property or the sale proceeds at the time she filed her bankruptcy petition.

**B. Rooker-Feldman Doctrine**

Appellant asserts that it was error for the Bankruptcy Court to rely on the Rooker-Feldman Doctrine and preclusion principles when it refused to consider some of her objections to the underlying state civil court orders. *See* Doc. 17 at 17 (Issue A.). Appellant also presents several issues on appeal that challenge the Sale Confirmation and Distribution Orders on both substantive and procedural grounds, including what appears to be allegations of due process and equal protection violations. *See* Doc. 17 at 20 (Issue E.), 22 (Issues G. and H.), 27 (Issue K.). The Bankruptcy Court held that it was precluded from considering these claims based on the Rooker-Feldman doctrine. E.R. 271:12-14. The Bankruptcy Court was correct in refusing to consider Appellant's collateral challenges to the state court orders based on purported errors made by the state civil court because it lacks jurisdiction to do so. The application of Rooker-Feldman was proper.

The Rooker–Feldman doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); *see also* Johnson v. DeGrandy, 512 U.S. 997, 1005–06 (1994) (stating that the losing party in a state court proceeding is generally "barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights"). In those situations, a district court lacks subject matter jurisdiction to review the state court judgment. *See* Exxon Mobil, 544 U.S. at 291-92. The doctrine's origin is based on the negative inferences arising from federal statutes granting the district courts only original jurisdiction to hear cases and granting only the United States Supreme Court jurisdiction to hear appeals from the state courts. In re Gruntz, 202 F.3d 1074, 1078 (9th Cir. 2000); *see* 28

U.S.C. §§ 1331, 1332 (providing federal district courts with original jurisdiction); *see* 28 U.S.C. § 1257(a) (providing the United States Supreme Court with appellate jurisdiction from state courts). "Thus, it follows that federal district courts have 'no authority to review the final determinations of a state court in judicial proceedings.'" In re Gruntz, 202 F.3d at 1078 (quoting Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir.1986)). "The doctrine applies only in 'limited circumstances,' [citation] where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance v. Dennis, 546 U.S. 459, 466 (2006) (citations omitted). Bankruptcy cases present an apparent "exception" to the Rooker-Feldman doctrine because bankruptcy courts retain the authority to avoid, modify, and discharge state judgments. *See* In re Gruntz, 202 F.3d at 1079; *see* In re Sasson, 424 F.3d 864, 871 (9th Cir. 2005). The Ninth Circuit has stated that "[t]he Rooker-Feldman doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case." In re Sasson, 424 F.3d at 871 (citing In re Gruntz, 202 F.3d at 1081, which discusses "core proceedings" in bankruptcy and holds that Rooker-Feldman does not deprive a bankruptcy court of jurisdiction for core proceedings).

The Bankruptcy Court's considered Appellant's motions and found that the Rooker-Feldman doctrine did not apply to matters which constituted core proceedings in bankruptcy. The Bankruptcy Court properly exercised jurisdiction when it determined that the Second Reimbursement Order was void. A bankruptcy discharge "(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged…(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524. The Ninth Circuit B.A.P. has specifically stated that, "This necessarily places the bankruptcy court in the position of scrutinizing a state court judgment. The bankruptcy court, of necessity, must be able to ascertain the extent to which the judgment is void under § 524(a)(1) as an essential element of determining whether the § 524(a)(2) discharge injunction has been violated. The Rooker-Feldman doctrine

does not compel a contrary conclusion." In re Pavelich, 229 B.R. 777, 782 (B.A.P. 9th Cir. 1999). As the Second Reimbursement Order was a determination as to *in personam* liability, it was subject to the Bankruptcy Court's discharge injunction.

However, Rooker-Feldman did partially apply to consideration of the Distribution Order. The Bankruptcy Judge found that the Distribution Order was not subject to the same analysis as it dealt with an *in rem* liability which does not fall under 11 U.S.C. § 524 which only covers "personal liability." "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor *in personam* – while leaving intact another – namely  an action against the debtor *in rem*." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).  This includes *in rem* liability arising from a lien against real property secured by a deed of trust. See In re Akram, 259 B.R. 371, 375 (Bankr. C.D. Cal. 2001) ("[S]ection 524 does not affect, remove or discharge an in rem liability of property for debts. This means that liens on property are not eliminated by the discharge.").  A lien secured against a debtor's real property will "pass through bankruptcy unaffected" by the bankruptcy discharge. In re Cortez, 191 B.R. 174, 177 (B.A.P. 9th Cir. 1995); see Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); see In re Frazier, 448 B.R. 803, 809 (Bankr. E.D. Cal. 2011) ("[T]here is no dispute that a discharge, in and of itself, does not exonerate the debtor of the obligation or remove a lien.  The discharge imposes a statutory injunction preventing the creditor from enforcing the discharged debt against the debtor personally or against specified assets. [citation]  The discharge does not release a lien from the [d]ebtor's property, and the lien may continue to be enforced against the debtor's property which is subject to that lien.").  The Bankruptcy Court correctly held that the County retained the sales proceeds based on its consensual lien against Appellant's interest in the Property.  The County's lien established *in rem* liability against the Property which was therefore not discharged in bankruptcy.

The Bankruptcy Court limited the analysis to the dischargeability of the state civil court judgments.  The Bankruptcy Court's jurisdiction in this case arises from the implied power to protect the Congressional grant of exclusive jurisdiction to issue a discharge. *See* In re Pavelich, 229 B.R. at 783 ("The issuance of the bankruptcy discharge is a matter within exclusive federal

1   jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a
2   federal judgment. And a 'Congressional grant of exclusive jurisdiction to the federal courts
3   includes the implied power to protect that grant.'"). Enforcing the bankruptcy discharge is the
4   method the bankruptcy court uses to protect that grant of authority. To do that it is only necessary
5   to determine whether an order establishes a personal liability of the debtor and whether that
6   liability was discharged in bankruptcy. Once that determination has been made, the inquiry ceases
7   because 11 U.S.C. § 524(a) does not go beyond a debtor's discharged personal liability.

8        In the present case, Appellant sought to challenge the Distribution Order on other, non-
9   bankruptcy grounds; she essentially sought appellate review of the merits of state civil court
10  judgments in the Bankruptcy Court. Similarly, on appeal in this court, Appellant challenges the
11  validity of the state civil court judgments on grounds separate and distinct from whether the
12  discharge injunction was violated. *See* Doc. 17 at 20 (Issue E.), 22 (Issues G. and H.), 27 (Issue
13  K.). It is not necessary to address Appellant's collateral challenges to the state civil court orders to
14  determine whether they are void for violating the discharge injunction. As the Bankruptcy Court's
15  decision and the remainder of this decision demonstrate, the relevant issue is whether Appellant's
16  obligation to the County was based on an *in personam* liability or an *in rem* liability. Appellant
17  was the loser in the state civil court partition action which found in favor of the County and
18  awarded the County the proceeds from the sale of the Property based on *in rem* liability. Now in
19  federal court, Appellant seeks to have the state civil court orders set aside based on the merits of
20  the underlying judgments, which have nothing to do with bankruptcy jurisdiction. Such grounds
21  for appeal fall squarely within the bounds of Rooker-Feldman. *See* Exxon Mobil, 544 U.S. at 284.
22  The Bankruptcy Court properly refused to address those arguments. This court will also refrain
23  from considering Appellant's collateral challenges to the state civil court orders because the
24  Rooker-Feldman doctrine deprives the Court of jurisdiction.

25

26  **B. Consensual Lien**

27       The County's interest in the sale proceeds of the Property was secured by the deed of trust.
28  Prior to her trial in the criminal prosecution, Appellant executed a promissory note for the

County's benefit and a deed of trust was recorded against the Property. The Bankruptcy Court found that the discharge injunction was not violated because the County retained the sale proceeds pursuant to a valid lien on the Property that was not frustrated by the bankruptcy discharge. In reaching the this conclusion, the Bankruptcy Court interpreted the state civil court orders as establishing Appellant's liability to the County by way of a consensual lien recorded against the Property. Appellant claims this determination was error. *See* Doc. 17 at 23 (Issue I.) and 28 (Issue L.).[2] Specifically, Appellant contends that the County's lien was in fact a judicial lien that could be avoided in bankruptcy for frustrating a valid exemption.

In reaching its conclusion, the Bankruptcy Court considered the statutory requirements for distributing proceeds from a partition sale as required by the California Code of Civil Procedure. *See* E.R. 268-69. The Bankruptcy Court determined that the distribution of sale proceeds to the County rather than to Appellant was predicated on a finding by the state civil court that the County held a valid consensual lien against the Property which gave it a higher priority to the proceeds than Appellant. This was a proper interpretation of the state court orders in light of the controlling statutory scheme.

California Code of Civil Procedure § 873.820 provides a hierarchy of distribution for proceeds from a partition sale. Following payment of expenses of sale, costs of partition, and joint liens on the property, the residue is distributed to the parties. *See* Cal. Code Civ. Proc. § 873.820. California Code of Civil Procedure § 873.260 provides that "[w]here a lien is on an undivided interest of a party, the lien shall, upon division of the property, become a charge only on the share allotted to that party." Cal. Code Civ. Proc. § 873.260; *see also* Lee v. Nat'l Collection Agency, Inc., 543 F.Supp. 920, 922 (N.D. Cal. 1982) ("Where a lien exists on just one of the co-tenant's undivided interest, the property may be sold free and clear of the lien and the lien satisfied from the proceeds of the sale."). Under this statutory scheme, liens encumbering an undivided property

---

[2] Appellant appears to assert that the Bankruptcy Court took judicial notice of the orders in the partition action and thereafter relied on the truth of the factual findings made by the state civil court. See Doc. 17 at 28 (Issue L.). The Bankruptcy Court's F&C and the record before this Court do not support the view that judicial notice was taken of the state court orders or that the Bankruptcy Court relied on facts contained therein. Regardless, this Court takes *de novo* review of the F&C, examines applicable California law and to draw reasonable conclusions based on the Distribution Order, and comes to the same conclusion as the Bankruptcy Court.

11

interest will be satisfied before distribution to the property owner, giving the lienholders a priority interest in the sale proceeds.

The state civil court followed the distribution procedure in the Distribution Order. *See* E.R. 133-35.  Appellant's share was specifically found to be burdened by two lienholders – one of which was the County – and her share was used to satisfy those obligations. E.R. 135:1-5.  The Distribution Order expressly identified the County as a lienholder.  The Bankruptcy Court's conclusion that the County – as a lienholder – was found by the state civil court to have a higher priority than Appellant to the partition sale proceeds is consistent with California law.

The determination that the County's lienholder status was based on a consensual lien, as opposed to a judicial lien, is also supported by applicable law.  A judicial lien must be established by recording a judgment from the court against the property. Cal. Code Civ. Proc. § 697.310(a).  The County never recorded the Original Reimbursement Order against the Property, thus a judicial lien was never perfected. *See* Tassone v. Tovar, 28 Cal.App.4th 765, 769 (Cal. App. 2nd Dist. 1994) (an unrecorded judgment has no legal effect on property).  This clearly demonstrates that the County's reimbursement *could not* have been based on a judicial lien.  The fact that the state civil court afforded the County a distribution priority superior to Appellant must be grounded in a determination by that court that there was a valid consensual lien.

Appellant asserts that the Bankruptcy Court erred in determining that the County's lien could not be avoided. *See* Doc. 17 at 25 (Issue J.).  The language of 11 U.S.C. § 522(f) is clear that a lien on real property that impairs an exemption may only be avoided if it is a *judicial lien*. 11 U.S.C. §522(f)(1)(A).  A consensual lien on the Property simply cannot be avoided by 11 U.S.C. § 522(f). *See* 11 U.S.C. §522(f)(1).

Appellant also asserts two issues for appeal regarding a homestead exemption. *See* Doc. 17 at 20 (Issue D.) and 21 (Issue F.).[3]  The Bankruptcy Court determined, as this Court has, that the County had an interest in the sale proceeds based on a consensual lien which was not avoidable under 11 U.S.C. § 522(f).  This determination is correct.  Case law is clear that a homestead

---

[3] It is not apparent from the F&C that the Bankruptcy Court considered the matter of Appellant's claimed homestead exemption or if it was even raised below.  However, these issues can be disposed on the same basis as the lien avoidance issue.

1  exemption is not superior to a consensual lien. *See* In re Patterson, 139 B.R. 229, 232 (B.A.P. 9th
2  Cir. 1992) (stating that a consensual lien "cannot be defeated by a homestead exemption."); *see* In
3  re Pavich, 191 B.R. 838, 847 (Bankr. E.D. Cal. 1996) ("[E]xemption laws do not protect property
4  from enforcement of consensual liens."); *see* In re Bunn-Rodemann, 491 B.R. 132, 136 (Bankr.
5  E.D. Cal. 2013) ("[T]he [d]ebtor cannot claim an exemption in the value of the property subject to
6  the creditor's consensual lien. Exemptions may be claimed only against involuntary liens, such as
7  judgments, attachments, and execution liens.").

8        The Court makes no determination as to whether Appellant would be entitled to a
9  homestead exemption. The determination that Appellant's interest in the sale proceeds was
10 subject to the County's consensual lien means the lien could not be avoided regardless of the
11 existence of any exemptions and any exemption applicable would not reduce the amount to which
12 the County was entitled.

13

14 **C. Finality of State Civil Orders**

15       Appellant asserts that the bankruptcy discharge included a discharge of her obligation to
16 the County. *See* Doc. 17 at 19 (Issue C.). In Appellant's view, the bankruptcy discharge precludes
17 the County from retaining the sale proceeds because the discharge was obtained approximately
18 thirteen days prior to the state appellate court's decision affirming the orders from the civil court
19 in the partition action. Appellant also asserts that the Bankruptcy Court erred in stating and
20 presumably relying on the erroneous finding that the state civil court orders from the partition
21 action were not appealed. *See* Doc. 17 at 18 (Issue B.).

22       With reference to the Sale Confirmation and Distribution Orders, the Bankruptcy Judge did
23 mistakenly state "No appeal was taken by Debtor in the civil proceeding, and more than a year
24 later, Debtor filed her bankruptcy petition." E.R. 262:21-22. An appeal was taken and those
25 orders were not final at the time of the discharge. According to Appellant, the discharge order
26 from the Bankruptcy Court should have preclusive effect against the state appellate court.
27 However, the Bankruptcy Court's ultimate conclusion that the County did not violate the
28 discharge injunction by retaining the sale proceeds is based on the recognition that the state court

orders were a determination of Appellant's *in rem* liability, as opposed to her *in personam* liability, and therefore passed through bankruptcy. Appellant herself in briefing this appeal recognized the fact that "the Bankruptcy Court for the Eastern District of California had jurisdiction 'in rem,' i.e. to determine the rights of every person to the property in question, namely the equity in my home." Doc. 17, Appellant Opening Brief, at 16. Notwithstanding the factual mistake, the Bankruptcy Court's ultimate legal determination is correct.

### IV. Order

The Order of the Bankruptcy Court denying Appellant's Motion for Enjoinder to Creditor and Inferior Court and denying Appellant's Motion to Avoid Lien of Contra Costa County is AFFIRMED.

IT IS SO ORDERED.

Dated:  August 11, 2014                             _____
                                                                    SENIOR DISTRICT JUDGE